[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12340
Non-Argument Calendar
_____

D.C. Docket No. 2:08-cv-00419-MEF-WC

DERRICK MYRON LLOYD,
a.k.a. Rashad Abdul Hamid,

Plaintiff-Appellant.

versus

DAVID T. MARSHALL,
ROBERT THOMPSON,
S. TALLEY,
DAVID HENDERSON,
SYLVESTER MARTIN,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(July 29, 2013)

Before HULL, PRYOR and JORDAN, Circuit Judges.

PER CURIAM:

Derrick Lloyd appeals pro se the summary judgment against his complaint about the violation of his constitutional rights by the Sheriff of Montgomery County, Alabama, David T. Marshall; an agent of the United States Immigration and Customs Enforcement, David Henderson; and three officers of the Alabama Highway Patrol, Robert Thompson, Stan Talley, and Sylvester Martin. See 42 U.S.C. § 1983; Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999 (1971). We affirm.

Lloyd applied for an identification card at the Driver's License Office in Montgomery, Alabama, using a social security card in the name of Rashad A. Hamid and a birth certificate in the same name issued by the State of New Jersey. A license examiner suspected that the social security card was fraudulent because it had "raised areas and faint printing" and took the documents to Trooper Thompson, who verified identification documents for the license office. Thompson entered the social security number on a government database and discovered that the date of birth associated with the identification number did not match the birthdate listed on the birth certificate.

Lloyd agreed to talk to Troopers Thompson and Talley in the state troopers' office located in a different section of the building. Lloyd asserted that his identification documents were authentic and that he had encountered problems previously with his social security card, but after being told that the card was

2

fraudulent, Lloyd lowered his head, fidgeted in his chair, and refused to answer any additional questions. Talley told Lloyd that he was being arrested and to place his hands on the wall for a pat-down search. Lloyd complied initially, but stymied the search by turning around repeatedly to ask questions. Talley then instructed Lloyd to place his hands behind his back, but that process was interrupted when Agent Henderson stepped into the office and Lloyd tried to flee. Thompson, Talley, and Henderson pushed Lloyd on the ground, where he resisted being arrested until restrained with handcuffs.

Lloyd refused to provide his name and was fingerprinted. An identity check revealed that Lloyd had outstanding warrants in New York for violating parole and homicide. Thompson, Talley, and Martin then transported Lloyd to the Montgomery County Detention Facility and booked him for violating state law by possessing a forged instrument and resisting arrest. Lloyd did not complain of or have any noticeable injuries when he entered the detention facility.

Lloyd was charged in the district court for misusing a social security number, 42 U.S.C. § 408(a)(7)(B), and possession of a fraudulent means of identification, 18 U.S.C. § 1028(a)(6), and later convicted of both crimes. Lloyd also was indicted by a grand jury in Alabama for possessing a forged instrument, Ala. Code § 13A-9-6(a), and resisting arrest, id. § 13A-10-41(a). A state

3

prosecutor nol prossed the charge for possessing a forged instrument, and Lloyd was found guilty of resisting arrest following a bench trial.

Lloyd filed a civil complaint in the district court against the state troopers, Agent Henderson, and Sheriff Marshall.  Lloyd complained about being interviewed without receiving advice under Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966); false arrest; the use of excessive force; an unlawful fingerprinting; being discriminated against because of his Islamic name; being misclassified at the detention center; being denied his rights to counsel and a speedy trial; and being prosecuted successively in the state and federal courts.  The state troopers and Agent Henderson moved for summary judgment on the basis of qualified immunity and submitted affidavits and the arrest report in support of their motions.  Sheriff Marshall filed a special report in which he argued that Lloyd did not exhaust his administrative remedies.

A magistrate judge filed a report recommending that the district court enter summary judgment against Lloyd's complaint.  The magistrate judge concluded that the officers had probable cause to arrest Lloyd; had not violated Lloyd's right to equal protection by discriminating against him based on his Islamic name; had not obtained Lloyd's fingerprints unlawfully; and had not used excessive force during the arrest.  The magistrate judge also concluded that the failure to advise Lloyd of his Miranda rights was not a compensable injury; his successive

4

prosecutions did not violate the Double Jeopardy Clause of the Fifth Amendment; and he failed to exhaust his administrative remedies with regard to his conditions of confinement.  The district court adopted the report of the magistrate judge and dismissed Lloyd's complaint with prejudice.

We review a summary judgment de novo.  Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1274 (11th Cir. 2008).  The moving party bears the initial burden of establishing there is no genuine dispute of material fact, but "[o]nce the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial."  Dietz v. Smithkline Beecham Corp., 598 F.3d 812, 815 (11th Cir. 2010).  To survive a motion for summary judgment, the nonmovant must establish that "a fair-minded jury could return a verdict [in his favor] on the evidence presented."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986).

The district court correctly entered summary judgment in favor of Sheriff Marshall and against Lloyd's complaints about his classification at the detention center.  Under the Prisoner Litigation Reform Act of 1996, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The undisputed evidence establishes that the detention center provides a grievance

5

procedure for inmates; Lloyd failed to file any grievance about the conditions of his confinement; and Lloyd was aware of and used the grievance procedure to complain about a delay in mailing a letter to his wife.  Lloyd argues that the grievance process is "long and drawn out" and the Sheriff received notice of the grievances in the complaint, but he does not dispute that he failed to comply with the mandatory exhaustion requirement.

The district court also did not err by granting summary judgment in favor of the state troopers and Agent Henderson and against Lloyd's complaints regarding his arrest.  Even if we were to assume that Lloyd had been entitled to a Miranda warning, "failing to follow Miranda procedures . . . does not violate any substantive Fifth Amendment right such that a cause of action for money damages under § 1983 is created."  Jones v. Cannon, 174 F.3d 1271, 1291 (11th Cir. 1999). The officers had probable cause to arrest Lloyd for possessing an altered social security card, and that created "an absolute bar to . . . [his] constitutional challenge to [his] arrest."  See Brown v. City of Huntsville, Ala., 608 F.3d 724, 734 (11th Cir. 2010).  And Lloyd failed to present any evidence that the officers arrested him for using an Islamic name, which was required for Lloyd to prevail on his claim that the officers violated his right of equal protection.  See Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265, 97 S. Ct. 555, 563 (1977) ("Proof of . . . discriminatory intent or purpose is required to show a violation of

6

the Equal Protection Clause."). Lloyd was arrested lawfully, after which the officers were entitled to take his fingerprints to identify him. See United States v. Farias-Gonzalez, 556 F.3d 1181, 1189 (11th Cir. 2009). Lloyd also failed to establish that the officers used more force than necessary to capture and restrain him. See Nolin v. Isbell, 207 F.3d 1253, 1255–57 (11th Cir. 2000). Lloyd attempted to escape from custody, and he later admitted that he resisted arrest, the use of force ended when he was handcuffed, and he did not suffer any injuries.

Lloyd argues about being subjected to double jeopardy and denied his constitutional rights to a speedy trial, counsel, and to use his Islamic name, but these arguments fail. Lloyd's argument that his prosecution in the federal and state courts violated the Double Jeopardy Clause lacks merit, see Abbate v. United States, 359 U.S. 187, 189–96, 79 S. Ct. 666, 668–71 (1959), and fails because a judgment in his favor "would necessarily imply the invalidity of [his] conviction[s]," see Heck v. Humphrey, 512 U.S. 477, 487, 114 S. Ct. 2364, 2372 (1994). Lloyd argues summarily that he was deprived of a speedy trial and counsel to defend him, but he has waived these issues by failing to provide any substantive argument about them in his brief. See Fed. R. App. P. 28(a)(6); Old W. Annuity & Life Ins. Co. v. Apollo Grp., 605 F.3d 856, 860 n.1 (11th Cir. 2010). Lloyd also argues, for the first time on appeal, that the state troopers burdened his "right to identify himself by his [Islamic] name," in violation of the Religious Land Use and

7

Institutionalized Persons Act, but we decline to consider an argument that he did not present to the district court.  See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004).

We **AFFIRM** the summary judgment in favor of the state troopers, Agent Henderson, and Sheriff Marshall.