**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

TERENCE B. TEKOH,
          *Plaintiff-Appellant*,

v.

COUNTY OF LOS ANGELES; DENNIS
STANGELAND, Sergeant; CARLOS
VEGA, Deputy,
          *Defendants-Appellees*,

and

LOS ANGELES COUNTY SHERIFF'S
DEPARTMENT; DOES, 1 TO 10,
          *Defendants.*

No. 18-56414

D.C. No.
2:16-cv-07297-
GW-SK

ORDER

Filed June 3, 2021

Before: Kim McLane Wardlaw, Mary H. Murguia, and
Eric D. Miller, Circuit Judges.

Order;
Concurrence by Judge Miller;
Dissent by Judge Bumatay

# SUMMARY[*]

## Civil Rights

The panel denied a petition for panel rehearing, denied a petition for rehearing en banc on behalf of the court, and ordered that no further petitions shall be entertained.

The panel opinion vacated the district court's judgment on a jury's verdict, reversed the district court's judgment as to plaintiff's requested jury instruction, and remanded for a new trial in an action alleging, in part, that plaintiff's Fifth Amendment right against self-incrimination was violated when his un-*Mirandized* statement was used against him at his criminal trial. The panel held that in light of the Supreme Court's decision in *Dickerson v. United States*, 530 U.S. 428 (2000), which held that *Miranda* is a rule of constitutional law that could not be overruled by congressional action, where the un-*Mirandized* statement has been used against the defendant in the prosecution's case in chief in a prior criminal proceeding, the defendant has been deprived of his Fifth Amendment right against self-incrimination, and he may assert a claim against the state official who deprived him of that right under 42 U.S.C. § 1983.

Concurring in the denial of rehearing en banc, Judge Miller, joined by Judges Wardlaw and Murguia, stated that the Supreme Court's cases—most importantly, its reaffirmation of *Miranda* in *Dickerson v. United States*, 530 U.S. 428 (2000)—made clear that the right guaranteed by

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

*Miranda v. Arizona*, 384 U.S. 436 (1966), is among the "rights, privileges, or immunities secured by the Constitution and laws," so that 42 U.S.C. § 1983 provides a remedy when the prosecution introduces a defendant's un-*Mirandized* statement in its case in chief at his criminal trial.

Dissenting from the denial of rehearing en banc, Judge Bumatay, joined by Judges Callahan, Ikuta, Bennett, R. Nelson, Bress and VanDyke, stated that given the text and history of the Self-Incrimination Clause and the overwhelming weight of Supreme Court precedent, the court was wrong to rule that the lack of *Miranda* warnings by itself violates the Constitution for purposes of § 1983. Rather, *Miranda* is a procedural safeguard and the remedy for its violation is exclusion, not a § 1983 action.

## COUNSEL

Paul Hoffman (argued) and John Washington, Schonbrun Seplow Harris Hoffman & Zeldes LLP, Hermosa Beach, California; John Burton and Matt Sahak, Law Offices of John Burton, Pasadena, California; for Plaintiff-Appellant.

Antonio K. Kizzie (argued) and Rickey Ivie, Ivie McNeill Wyatt Purcell & Diggs APLC, Los Angeles, California, for Defendants-Appellees.

**ORDER**

Judges Wardlaw, Murguia, and Miller have voted to deny the petition for rehearing en banc. The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 35.

The petition for rehearing en banc is **DENIED**. A concurrence in the denial by Judge Miller and a dissent from the denial by Judge Bumatay are filed concurrently with this order. No further petitions for rehearing or rehearing en banc will be entertained.

Judge Collins did not participate in the consideration of the petition for rehearing en banc.

**IT IS SO ORDERED.**

---

MILLER, Circuit Judge, with whom WARDLAW and MURGUIA, Circuit Judges, join, concurring in the denial of rehearing en banc:

The issue here is whether the right guaranteed by *Miranda v. Arizona*, 384 U.S. 436 (1966), is among the "rights, privileges, or immunities secured by the Constitution and laws," so that 42 U.S.C. § 1983 provides a remedy when the prosecution introduces a defendant's un-*Mirandized* statement in its case in chief at his criminal trial. The Supreme Court's cases—most importantly, its reaffirmation of *Miranda* in *Dickerson v. United States*, 530 U.S. 428 (2000)—make clear that the answer is yes.

Today's dissenters invoke the history of the Fifth Amendment in arguing that the answer should be no. They also find support for their position in Supreme Court cases that use language that is arguably in tension with the holding of *Dickerson.* But even if we were to sit en banc, we would remain judges of a "[t]ribunal[] inferior to the [S]upreme Court." U.S. Const. art. I, § 8, cl. 9. As such, we lack authority to resolve contradictions in the Supreme Court's precedents. To the contrary, we have repeatedly been admonished that "[i]f a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989); *accord Tenet v. Doe*, 544 U.S. 1, 10–11 (2005); *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997).

For more than 50 years, there has been a robust debate about the conceptual underpinnings of *Miranda*. It is neither necessary nor appropriate for us to try to resolve that debate. In particular, the "text and history of the Fifth Amendment" (Dissent at 12) and the "long history of the common law right" that preceded it (Dissent at 19) are irrelevant to the question before us. That is not to deny that text and history are important to constitutional interpretation—they surely are. It is merely to recognize that the Supreme Court has already done the necessary constitutional interpretation. Like it or not, *Miranda* was not an originalist decision. That is one of the reasons why Justice Scalia criticized it—in a phrase echoed by today's dissenters—as "a milestone of judicial overreaching." *Dickerson*, 530 U.S. at 465 (Scalia, J., dissenting); *cf.* Dissent at 11–12. But we are not dissenting Supreme Court Justices. As individuals, we are free to criticize *Miranda*, but as a court, our task is simply to interpret and apply it.

It is true that the Supreme Court has described *Miranda* as a "prophylactic" rule, and that the prophylactic nature of *Miranda* has been important to many of the Court's decisions narrowing *Miranda*'s scope. For example, the Court has held that a statement obtained in violation of *Miranda* may be introduced for impeachment purposes, *Oregon v. Hass*, 420 U.S. 714 (1975); that there is a "public safety" exception to the warning requirement, *New York v. Quarles*, 467 U.S. 649 (1984); and that *Miranda* does not bar the introduction of a post-warning confession obtained as the fruit of an earlier un-*Mirandized* statement, *Oregon v. Elstad*, 470 U.S. 298 (1985). Surveying those decisions in his *Dickerson* dissent, Justice Scalia argued that "it is simply no longer possible for the Court to conclude . . . that a violation of *Miranda*'s rules is a violation of the Constitution." 530 U.S. at 454. But as he went on to say, "that is what is required before the Court may disregard a law of Congress governing the admissibility of evidence in federal court"—which is precisely what the Court did. *Id.*

Justice Scalia's arguments in *Dickerson* highlight a tension in the Court's jurisprudence. As today's dissent demonstrates, one can begin with the cases treating *Miranda* as a prophylactic rule and reason to the conclusion that the doctrine must not be required by the Constitution. But if that were so, then Congress would be able to alter it, and *Dickerson* would have come out the other way. The dissenters evidently agree with Justice Scalia's reasoning, and some of us, or at least one of us, find it compelling as well, but it is not up to this court to resolve the tension he identified. Instead, we must "follow the case which directly controls." *Rodriguez de Quijas*, 490 U.S. at 484. Here, that case is *Dickerson*, which proves that *Miranda* announced a constitutional rule. We know that not just because of what the Court said—"*Miranda* announced a constitutional rule,"

530 U.S. at 444—but because of what it did: strike down an Act of Congress purporting to abolish *Miranda*. If *Miranda* is not "secured by the Constitution," 42 U.S.C. § 1983, then why is Congress not allowed to dispense with it?

If further proof were needed, we supply it every time we review a *Miranda* claim in a habeas challenge to a state conviction. *See Withrow v. Williams*, 507 U.S. 680 (1993). In language strikingly similar to that of section 1983, the habeas statute makes relief available to state prisoners only if they are in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). No one thinks *Miranda* comes from a treaty, so a *Miranda* violation must be a "violation of the Constitution or laws." The *Miranda* right, therefore, must be one of those rights "secured by the Constitution and laws." 42 U.S.C. § 1983.

It will not do to say that *Miranda* is merely a "rule," as if that were different from a "right," "privilege," or "immunity." To be sure, the Supreme Court has held that section 1983 is not available to a plaintiff who complains of the violation of a statute that creates abstract interests but not "individually enforceable private rights." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283, 290 (2002). Those cases do not apply here because *Miranda* indisputably creates individual legal rights that are judicially enforceable. (Any prosecutor who doubts this can try to introduce an un-*Mirandized* confession and then watch what happens.) The Supreme Court observed in *Withrow* that *Miranda* "differs from" the Fourth Amendment exclusionary rule precisely because that rule, unlike *Miranda*, "is not a personal constitutional right." 507 U.S. at 691 (quoting *Stone v. Powell*, 428 U.S. 465, 486 (1976)). *Miranda* therefore fits comfortably within the ordinary understanding of a "right." *See id.* ("'Prophylactic' though it may be, . . . *Miranda* safeguards 'a fundamental

trial right.'" (emphasis omitted) (quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259, 264 (1990))).

The Supreme Court's cases since *Dickerson* do not alter this analysis. Applying the rule of *Marks v. United States*, 430 U.S. 188 (1977), to the fractured decisions in *Chavez v. Martinez*, 538 U.S. 760 (2003), and *United States v. Patane*, 542 U.S. 630 (2004), yields no holding that unsettles *Dickerson*. While the decisions might be taken to have "persuasive force" (Dissent at 24) as indications of how to count votes and predict how the Supreme Court will someday rule, making such predictions is the role of academics and journalists, not circuit judges. Our duty is to follow what the Supreme Court has done, not forecast what it might do.

Finally, even if everything I have said so far is wrong, it would not mean that this case "involves a question of exceptional importance" warranting rehearing en banc. Fed. R. App. P. 35(a)(2). The circuit split is not nearly as lopsided as the dissenters assert. They make it appear so only by counting three circuits' worth of unpublished decisions and, for good measure, throwing in decisions that preceded *Dickerson* or that did not involve the introduction of un-*Mirandized* statements at trial but instead involved only the failure to give warnings—an issue the panel expressly declined to address. *See Tekoh v. County of Los Angeles*, 985 F.3d 713, 724 (9th Cir. 2021) ("We do not hold that taking an un-*Mirandized* statement always gives rise to a § 1983 action. We hold only that where government officials introduce an un-*Mirandized* statement to prove a criminal charge at a criminal trial against a defendant, a § 1983 claim may lie against the officer who took the statement."); *see also Chavez*, 538 U.S. at 769 (plurality opinion); *Elstad*, 470 U.S. at 306 n.1. As the panel explained, our decision is

aligned with most of the circuits that have considered the issue after *Dickerson* and *Chavez*. *See Tekoh*, 985 F.3d at 723. But more importantly, whatever the tally of circuits, everyone agrees that we are not alone (Dissent at 25–26), so granting rehearing en banc would not eliminate the conflict but at most would simply move us from one side to the other. Nor do the dissenters suggest that the panel's decision, the product of a quirky set of facts that required us to confront this issue for the first time in the five decades since *Miranda* was decided, threatens to bury the district courts of the western United States beneath an avalanche of section 1983 *Miranda* litigation.

There remains only the objection that "our interpretation of the Self-Incrimination Clause is detached from text and history." (Dissent at 26). That is a complaint about *Miranda* and *Dickerson*, not the decision here. Perhaps the defendants will find it helpful in preparing a petition for a writ of certiorari, but it is a poor reason to grant rehearing en banc.

---

BUMATAY, Circuit Judge, joined by CALLAHAN, IKUTA, BENNETT, R. NELSON, BRESS, and VANDYKE, dissenting from the denial of rehearing en banc:

Most Americans can likely recite the *Miranda* warnings by heart: the right to remain silent, that any statements given can be used against you, the right to an attorney during questioning, and the right to have an attorney appointed. Many also know that the Supreme Court announced these warnings in the watershed case, *Miranda v. Arizona*, 384 U.S. 436 (1966).  But few, I venture to guess, can identify the origin and nature of the warnings.  Is *Miranda* a right mandated by the Fifth Amendment's Self-

Incrimination Clause?   Or are the warnings prophylactic rules created by judges to safeguard the people's rights?

Terence Tekoh asks us to resolve these questions.   A police officer questioned him about a crime committed at the hospital where he worked.   Tekoh agreed to speak with the officer, but the officer never gave him the *Miranda* warnings.   Tekoh eventually confessed to the crime.   He was charged, tried, and acquitted—even after the introduction of his confession at trial.

Following his acquittal, Tekoh sued the officer under 42 U.S.C. § 1983, alleging a violation of his Fifth Amendment right.   At trial, Tekoh argued that it was enough for him to prevail if he proved that the officer obtained his confession without providing him *Miranda* warnings.   The district court disagreed, instructing the jury that the officer violated Tekoh's Fifth Amendment right only if the officer coerced Tekoh into confessing under the totality of the circumstances.   In other words, the district court determined that the lack of *Miranda* warnings was a factor for a Fifth Amendment violation, but it did not violate the right in and of itself.   The jury returned a full defense verdict, and Tekoh appealed.

The central issue in this case, therefore, is whether *Miranda* warnings amount to a constitutional right.   The question is important because § 1983 only provides a cause of action for violating "any rights, privileges, or immunities secured by the Constitution and laws."   42 U.S.C. § 1983. Section 1983 won't support liability for violating anything less than a "right"—like prophylactic rules.

Before reaching this question, we should have heeded what the Supreme Court has said about the matter. Many times, the Court has discussed the nature of *Miranda*. And the answer could not be clearer:

| Supreme Court cases referring to *Miranda* warnings as "prophylactic" | Supreme Court cases referring to *Miranda* warnings as a "constitutional right" |
|---|---|
| *Michigan v. Payne*, 412 U.S. 47, 53 (1973) • *Michigan v. Tucker*, 417 U.S. 433, 439 (1974) • *Brown v. Illinois*, 422 U.S. 590, 600 (1975) • *Fare v. Michael C.*, 439 U.S. 1310, 1314 (1978) • *North Carolina v. Butler*, 441 U.S. 369, 374 (1979) • *United States v. Henry*, 447 U.S. 264, 274 (1980) • *South Dakota v. Neville*, 459 U.S. 553, 564 n.15 (1983) • *New York v. Quarles*, 467 U.S. 649, 654 (1984) • *Oregon v. Elstad*, 470 U.S. 298, 309 (1985) • *Connecticut v. Barrett*, 479 U.S. 523, 528 (1987) • *Arizona v. Roberson*, 486 U.S. 675, 681 (1988) • *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) • *Michigan v. Harvey*, 494 U.S. 344, 350 (1990) • *McNeil v. Wisconsin*, 501 U.S. 171, 176 (1991) • *Withrow v. Williams*, 507 U.S. 680, 691 (1993) • *Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993) • *Davis v. United States*, 512 U.S. 452, 458 (1994) • *Montejo v. Louisiana*, 556 U.S. 778, 794 (2009) • *Maryland v. Shatzer*, 559 U.S. 98, 103 (2010) • *J.D.B. v. North Carolina*, 564 U.S. 261, 269 (2011) • *Howes v. Fields*, 565 U.S. 499, 507 (2012) | |

The Court has described *Miranda* warnings as "prophylactic" at least 21 times and called them a "constitutional right" zero times.

With this background, this should have been a straightforward case. Under Supreme Court precedent, a *Miranda* warning is not a constitutional right, and we should have affirmed the judgment accordingly. But that is not what happened. Our court reversed, holding that Tekoh need only show that his confession was taken in violation of *Miranda* and later used against him in a criminal proceeding to prove his § 1983 claim. That is because, we said, *Miranda* was indeed a "right secured by the Constitution." *Tekoh v. County of Los Angeles*, 985 F.3d 713, 720 (9th Cir. 2021).

Rather than following the overwhelming weight of Supreme Court authority, we justify our decision with cherry-picked lines from a few cases—though none (save the

Seventh Circuit) directly hold as we do today.  In doing so, we also place ourselves at direct odds with six of our fellow circuit courts.  And so yet again, our court embarks on brazen judicial overreach.

To be clear, this case has nothing to do with whether *Miranda* warnings are required before custodial interrogation—they are.  Neither does it deal with whether un-*Mirandized* statements must be excluded from the government's case-in-chief—Supreme Court case law says they should be.  Nor does this case ask whether Tekoh was coerced into confessing—our court deemed coercion irrelevant.  Instead, the narrow question before the court was whether the introduction of an un-*Mirandized* statement at trial *alone* constitutes the violation of a "right" secured by the Constitution.  Our court's answer?  Yes, the lack of *Miranda* warnings violates the Fifth Amendment even if subsequent statements were freely and voluntarily given.  In adopting this novel reading of *Miranda*, our court contravenes the text and history of the Fifth Amendment and the undeniable weight of precedent.  Along the way, our court's decision pushes us further than others in rewriting the Fifth Amendment.

For this reason, I respectfully dissent from the denial of rehearing en banc.

## I.

## A.

The Fifth Amendment's Self-Incrimination Clause provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  The text of the Amendment does not provide for a right to receive warnings before interrogation by a law

enforcement officer, as envisioned by *Miranda*. Rather, the Fifth Amendment enshrined the "ancient" English common law right against self-incrimination known as *nemo tenetur seipsum prodere* ("no man shall be compelled to criminate himself"). *See* John H. Wigmore, *Nemo Tenetur Seipsum Prodere*, 5 Harv. L. Rev. 71, 71 (1891); *Brown v. Walker*, 161 U.S. 591, 596–97 (1896). Under that maxim, "a confession forced from the mind by the flattery of hope, or by the torture of fear, comes in so questionable a shape when it is to be considered as the evidence of guilt, that no credit ought to be given to it; and therefore it is rejected." *R v. Warickshall* (1783), 168 Eng. Rep. 234, 235; 1 Leach 263, 263–64.

What originated in the old world quickly made its way over the Atlantic. By the Founding, "the principle of the *nemo tenetur* maxim was simply taken for granted and so deeply accepted that its constitutional expression had the mechanical quality of a ritualistic gesture in favor of a self-evident truth needing no explanation." Leonard W. Levy, *Origins of the Fifth Amendment* 430 (1968). Well before the Constitution was ratified, the right was ubiquitous: each of the eight states that had a separate bill of rights prohibited compelled self-incrimination. *Id.* at 412. Among the first proposed amendments to the federal Constitution was the right against self-incrimination. *See id.* at 422–23; *see also Brown*, 161 U.S. at 597 (noting that the maxim, "which in England was a mere rule of evidence, became clothed in this country with the impregnability of a constitutional enactment"). Justice Story confirmed that the Self-Incrimination Clause was "but an affirmance of a common law privilege." 3 Joseph Story, *Commentaries on the Constitution of the United States* § 1782, at 660 (Boston, Hilliard, Gray & Co. 1833).

The right's focus on voluntariness remained throughout the transition from English to American common law. An early American treatise explained that "a confession, in order to be admissible, must be free and voluntary: that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." 2 William Oldnall Russell & Charles Sprengel Greaves, *A Treatise on Crimes and Misdemeanors* 826 (5th Am. ed., 1845) (emphasis omitted).

Early precedent confirmed the basic common law understanding of the Clause—that its lodestar is voluntariness, not prophylaxis. According to Chief Justice Marshall, it was "a settled maxim of law that no man is bound to criminate himself," and that if a person's answer to a question might incriminate him, "it must rest with himself, who alone can tell what it would be, to answer the question or not." *United States v. Burr*, 25 F. Cas. 38, 39–40 (C.C.D. Va. 1807).

While legitimate debate may remain around its scope, as a matter of history, the right against self-incrimination did not include the right to be given particular warnings before custodial interrogation may begin. From the Fifth Amendment's ratification to the mid-20th century, neither the text nor the common law right was understood to require law enforcement officers to give such warnings.

## B.

It was not until almost 200 years after our Founding that the Supreme Court announced the requirement of *Miranda* warnings in 1966. *Miranda*, 384 U.S. 436. That decision, however, does not suggest that *Miranda* warnings are part of the Fifth Amendment. Instead, the opinion explicitly refers

to the *Miranda* rules, not as a constitutional right, but as "*procedural safeguards* effective to secure the privilege against self-incrimination." *Id.* at 444 (emphasis added). Thus, *Miranda* itself offers no reason to conclude that it announced a constitutional right.

In *Miranda*, the Supreme Court began by raising concerns with the police tactics used to obtain confessions from those in custody. *Id*. at 445–55. Recounting the various psychological measures employed, the Court was alarmed that police regularly "persuade, trick, or cajole [those in custody] out of exercising [their] constitutional rights." *Id*. at 455. The Court decried the "interrogation environment . . . created for no purpose other than to subjugate the individual to the will of his examiner." *Id*. at 457. To counter these tactics, the Court warned that "adequate protective devices" are necessary to counter "the compulsion inherent in custodial surroundings" and to ensure that statements made in custody are "truly" the product of "free choice." *Id*. at 458.

The Court thus adopted the requirement of the *Miranda* warnings as "proper safeguards" to "combat the[] [inherently compelling] pressures" of custodial interrogation and to "permit a full opportunity to exercise the privilege against self-incrimination." *Id.* at 467. The Court was concerned that, without such warnings, the accused would be "compel[led] . . . to speak where he would not otherwise do so freely." *Id*.

Importantly, the Court did not state that the *Miranda* warnings were anything more than prophylactic. It even refused to say that "the Constitution necessarily requires adherence to any particular" pre-interrogation procedures. *Id.* Instead, the Court was open to federal and state governments devising "potential alternatives for protecting

the privilege" outside of *Miranda* warnings. *Id*. Indeed, the Court clarified that its "decision in no way creates a constitutional straitjacket." *Id*. Nothing in *Miranda* itself, therefore, can be said to constitutionalize its eponymous warnings.

This understanding of *Miranda* as prophylactic continued in the decades that followed. For example, in *Michigan v. Tucker*, 417 U.S. 433 (1974), the Court described the *Miranda* warnings as merely a "supplement" to constitutional doctrine, not doctrine itself. *Id.* at 443. The Court noted that *Miranda* "established a set of specific protective guidelines" that would "help police officers conduct interrogations without facing a continued risk that valuable evidence would be lost." *Id.* And it distinguished between police conduct that deprives a person of their "privilege against compulsory self-incrimination" and police conduct that failed to provide "the full measure of procedural safeguards associated with that right." *Id.* at 444. So, even though the suspect in *Tucker* did not receive the entire complement of *Miranda* warnings, the Court refused to exclude his statements since his interrogation was not coercive. *Id.* at 445, 452.

The Court emphasized this same understanding of *Miranda* in *New York v. Quarles*, 467 U.S. 649 (1984). In that case, an officer asked a suspect where he disposed of a firearm before formally placing the suspect under arrest and before administering *Miranda* warnings. *Id*. at 652. Holding the suspect's answer admissible, the Court explained that "absent some officially coerced self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions." *Id.* at 654 (simplified); *see id.* at 659. The Court then reaffirmed that *Miranda*'s prophylactic warnings are "not themselves rights protected by the

Constitution but are instead measures to insure that the right against compulsory self-incrimination is protected." *Id.* at 654 (simplified). Rather than being a constitutional right, *Miranda* warnings provide mere "practical reinforcement for the Fifth Amendment right." *Id.* (simplified). With no coercion in the case, the Court created the "public safety" exception to *Miranda* warnings. *Id.* at 655–56. It explained that in some situations, "a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." *Id.* at 657.

A few years later in *Oregon v. Elstad*, 470 U.S. 298 (1985), the Court held that, without coercion, an initial failure to administer *Miranda* warnings did not taint a suspect's subsequent, *Mirandized* admission. *Id.* at 312–14. As before, the Court reiterated that the *Miranda* rule "serves the Fifth Amendment," but "sweeps more broadly than the Fifth Amendment itself." *Id.* at 306. "It may be triggered even in the absence of a Fifth Amendment violation," because the Amendment itself is concerned only with *compelled* testimony. *Id.* at 306–07. As a result, the Court explained, "*Miranda*'s preventive medicine provides a remedy even to the defendant who has suffered no identifiable constitutional harm." *Id.* at 307.

Supreme Court precedent, then, has uniformly recognized *Miranda* rules as prophylactic safeguards of the Fifth Amendment right—not a constitutional right in and of itself. And contrary to this court's holding, *Dickerson v. United States*, 530 U.S. 428 (2000), did not change that analysis. That case involved a congressional enactment to effectively overrule *Miranda*. *Id*. at 436 (noting that 18 U.S.C. § 3501 made "voluntariness" the "touchstone of admissibility" without regard for *Miranda* warnings). The

question in *Dickerson* was whether Congress could supersede *Miranda*.  *Id.* at 437.  In answering "no," the Court held that Congress could not legislatively override a "constitutional rule," *id.* at 441, and described *Miranda* as a "constitutional decision" with "constitutional underpinnings," *id*. at 438, 440 n.5.  Because "Congress may not legislatively supersede [the Court's] decisions interpreting and applying the Constitution," the Court struck down the law as unconstitutional.  *Id.* at 437, 444.

Nowhere in the opinion, however, did the Court say that the introduction at trial of an un-*Mirandized*, yet voluntary, confession violates the Fifth Amendment by itself.  In other words, it never described *Miranda* as a constitutional "right," but called it something different—a "constitutional rule."  Critically, the Court recognized just this: the dissent invited the *Dickerson* majority to "hold that the *Miranda* warnings are required by the Constitution" to avoid "judicial overreach[]."  *Id.* at 442.[1]  But the majority expressly declined that invitation and simply denied that it was overreaching, responding, "we need not go further than *Miranda* to decide this case."  *Id.*  The Court thus acknowledged that holding that the Constitution itself

---

[1] In dissent, Justice Scalia accused the majority of exercising "an immense and frightening antidemocratic power" by striking down an Act of Congress for violating a "constitutional rule."  *Dickerson*, 530 U.S. at 445–46 (Scalia, J., dissenting).  Justice Scalia invited the majority to take the opinion "out of the realm of power-judging and into the mainstream of legal reasoning" by simply declaring that *Miranda* was in fact a constitutional right.  *Id*. at 446.  He observed that the majority "cannot say that, because a majority of the Court does not believe it."  *Id*. In his view, since the Court can only nullify statutes in contravention of the Constitution, the *Dickerson* majority acted "in plain violation of the Constitution."  *Id*.

required pre-interrogation warnings would go *further* than *Miranda*, and it refused to do so.

## C.

Given the text and history of the Self-Incrimination Clause and the overwhelming weight of Supreme Court precedent, our court was wrong to rule that the lack of *Miranda* warnings by itself violates the Constitution for purposes of § 1983. That section provides a civil action against state officials who cause a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. *Miranda* warnings are neither "rights, privileges, [n]or immunities" under the Constitution; so a violation of *Miranda* alone cannot sustain money damages under § 1983.

To begin, the text of the Fifth Amendment in no way leads to our court's contrary reading—it says nothing about a pre-interrogation right to be advised of the right against self-incrimination. The long history of the common law right likewise provides no support for a fundamental right *to be warned*. Instead, the text and history show that the Self-Incrimination Clause protects against coerced or compelled confessions, and mandates that any statement used against an accused at trial be freely and voluntarily given.

And by the plain terms of the *Miranda* decision and at least 21 other Supreme Court cases interpreting it,[2] the absence of its warnings cannot sustain a claim for money damages. These cases all describe the *Miranda* warnings as "prophylactic," *Quarles*, 467 U.S. at 654, "procedural safeguards," *Miranda*, 384 U.S. at 444, or "protective

---

[2] *See* chart, *supra*.

guidelines," *Tucker*, 417 U.S. at 443. Not one of them describes *Miranda* warnings as a "constitutional right."

This distinction is important because § 1983 only affords a cause of action for "the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *see also Carey v. Piphus*, 435 U.S. 247, 254 (1978) (explaining that the "basic purpose of a § 1983" claim is "to compensate persons for injuries caused by the deprivation of constitutional rights"). The Court has been clear that "rights" are to be interpreted strictly in the § 1983 context; they don't include "broader or vaguer 'benefits' or 'interests.'" *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). They certainly don't include "judicially created prophylactic rules." *Chavez v. Martinez*, 538 U.S. 760, 780 (2003) (Scalia, J., concurring in part in the judgment).

So the central question for the jury on Tekoh's claim was whether the confession admitted at trial was improperly coerced, not merely whether *Miranda* was violated. Of course, as the district court recognized, whether *Miranda* warnings were given is a factor—but only *a factor*—in determining the voluntariness of Tekoh's confession under the totality of the circumstances.

*Dickerson* did not change this understanding. In that case, the Court expressly affirmed that it was not going beyond *Miranda*. 530 U.S. at 442 ("[W]e need not go further than *Miranda* to decide this case."). Indeed, *Dickerson* quotes *Tucker*'s language, without qualification, that *Miranda*'s procedural safeguards are "not themselves rights protected by the Constitution." *Id*. at 438 (quoting *Tucker,* 417 U.S. at 444). To be sure, *Dickerson* announces that *Miranda* is a "constitutional rule." *Id*. at 428. But that is a far cry from elevating it to a "constitutional right"—a

promotion that the Court explicitly declined to allow. *Id*. at 442. Accordingly, the best reading of *Dickerson* is that it does not undermine the long line of cases characterizing *Miranda* as a prophylactic rule and not a "constitutional right."

The Court confirmed this understanding in *Chavez*. In that case, a plaintiff brought a § 1983 action against an officer for questioning him without *Miranda* warnings— much like this case except that his admissions were never used against him in criminal proceedings. 538 U.S. at 764– 65 (plurality opinion). A plurality of four Justices reiterated that *Miranda* remained a prophylactic rule and was not a constitutional right. *Id.* at 772. The plurality explained that "a violation of the constitutional right against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case." *Id.* at 770 (emphasis omitted). But "[r]ules designed to safeguard a constitutional right . . . do not extend the scope of the constitutional right itself." *Id.* at 772. As a result, "violations of judicially crafted prophylactic rules do not violate the constitutional rights of any person." *Id.* Because *Miranda* is not a constitutional right, the plurality concluded that the failure to provide *Miranda* warnings "cannot be grounds for a § 1983 action." *Id.*[3]

Justice Souter, joined by Justice Breyer, likewise concurred in denying relief under § 1983 for violating *Miranda*. *See id.* at 777 (Souter, J., concurring in the judgment). He agreed that *Miranda* warnings are solely a

---

[3] Notably, Chief Justice Rehnquist, the author of *Dickerson*, joined Justice Thomas's plurality opinion in full. 538 U.S. at 763 n.*. So, our court's use of *Dickerson* to announce a sea-change in *Miranda* jurisprudence would be lost on the author of that opinion himself.

"complementary protection" to and "outside the core" of the Fifth Amendment. *Id.* at 777–78. While noting that the "absence of *Miranda* warnings" as "a basis for a § 1983 action *under any circumstance*" was not before the Court, Justice Souter questioned the need for civil liability when certain non-core Fifth Amendment violations occurred, like "whenever the police fail to honor *Miranda*." *Id*. at 778–79, 779 n.* (emphasis added). He noted that "[r]ecognizing an action for damages in [such a case] not only would revolutionize Fifth . . . Amendment law," but would have to be justified as "necessary in aid of the basic guarantee." *Id*. at 779. But there was "no reason to believe" an extension of § 1983 to *Miranda* was necessary, because existing measures such as "excluding testimonial admissions" had been sufficient. *Id.* While there was "no failure of efficacy infecting . . . Fifth Amendment law" requiring an extension of § 1983, Justice Souter departed from the plurality and suggested that the particular "outrageous conduct" by the police in *Chavez* could give rise to a separate § 1983 claim under substantive due process (a separate claim Tekoh did not raise). *Id*.

*Chavez* thus removes any doubt over whether Tekoh can bring a § 1983 action for violating *Miranda*. After *Chavez*, "it is now clear that there is no cause of action for money damages for violations of *Miranda*." Erwin Chemerinsky, *Federal Jurisdiction* § 8.9, at 631–32 (8th ed. 2021); *see also Renda v. King*, 347 F.3d 550, 558 (3d Cir. 2003) ("[S]ix Justices (Chief Justice Rehnquist, together with Justices Thomas, O'Connor, Scalia, Souter, and Breyer) agreed that mere custodial interrogation absent *Miranda* warnings is not a basis for a § 1983 claim.").

The year after *Chavez*, the Court again reinforced the "prophylactic" nature of *Miranda* post-*Dickerson*. *See*

*United States v. Patane*, 542 U.S. 630, 636, 639 (2004) (plurality opinion). At issue was whether physical evidence obtained as the fruit of an unwarned, but voluntary, statement was admissible. *Id*. at 633–34. A plurality of three Justices explained that "a mere failure to give *Miranda* warnings does not, by itself, violate a suspect's constitutional rights." *Id.* at 641. According to the plurality, this was "evident in many of [the Court's] pre-*Dickerson* cases," and the Court has "adhered to this view since *Dickerson*." *Id.* The plurality noted that "*Dickerson*'s characterization of *Miranda* as a constitutional rule does not lessen the need to maintain the closest possible fit between the Self-Incrimination Clause and any judge-made rule designed to protect it." *Id*. at 643. And admitting evidence that is the fruit of a *Miranda* violation without more "presents no risk that a defendant's coerced statements . . . will be used against him at a criminal trial." *Id*.

Justice Kennedy, joined by Justice O'Connor, concurred and agreed with the majority that *Dickerson* "did not undermine" the Court's precedents like *Elstad* and *Quarles*. *Id*. at 644–45 (Kennedy, J., concurring in the judgment). Justice Kennedy only differed from the plurality in concluding that it was unnecessary to characterize the statements at issue as taken in violation of *Miranda*. *Id*. at 645.

Contrary to the panel's holding, then, *Chavez* and *Patane* add to the overwhelming precedent that a *Miranda* violation itself does not violate a constitutional right.[4] Rather than

---

[4] Those two cases are not alone in calling *Miranda* prophylactic after *Dickerson*. *See Montejo v. Louisiana*, 556 U.S. 778, 794 (2009) (describing *Miranda* as "prophylactic protection of the right against compelled self-incrimination"); *Maryland v. Shatzer*, 559 U.S. 98, 103

find every which way to distinguish or limit these cases, *see Tekoh*, 985 F.3d at 720–23, our court should have accepted their persuasive force and rejected Tekoh's theory of § 1983 liability.

Throughout its history, the Fifth Amendment's watchword has been "voluntariness." Our court's decision substitutes that word with "warnings." That is simply incorrect, as a matter of text, history, and precedent.

## D.

The court's decision today puts us at odds with six other circuit courts. The Second, Fifth, Sixth, Eighth, Tenth, and Eleventh Circuits hold, as I would, that *Miranda* is a procedural safeguard and the remedy for its violation is exclusion, not a § 1983 action. *See Dalessio v. City of Bristol*, 763 F. App'x 126, 127 (2d Cir. 2019) (unpublished) ("Dalessio cannot state a Fifth Amendment claim because 'the failure to give *Miranda* warnings does not create liability under § 1983.'" (quoting *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995)) (per curiam)); *Foster v. Carroll County*, 502 F. App'x 356, 358 (5th Cir. 2012) (unpublished) ("Violations of the prophylactic *Miranda* procedures do not amount to violations of the Constitution

---

(2010) ("In [*Miranda*], the Court adopted a set of prophylactic measures to protect a suspect's Fifth Amendment right from the 'inherently compelling pressures' of custodial interrogation." (citation omitted)); *Florida v. Powell*, 559 U.S. 50, 59 (2010) (describing *Miranda* warnings as "procedural safeguards" (simplified)); *J.D.B. v. North Carolina*, 564 U.S. 261, 269 (2011) (describing *Miranda* warnings as "a set of prophylactic measures designed to safeguard the constitutional guarantee against self-incrimination"); *Howes v. Fields*, 565 U.S. 499, 507 (2012) ("*Miranda* adopted a set of prophylactic measures designed to ward off the inherently compelling pressures of custodial interrogation . . . ." (simplified)).

itself and, as such, fail to raise a cause of action under § 1983."); *McKinley v. City of Mansfield*, 404 F.3d 418, 432 n.13 (6th Cir. 2005) ("McKinley also argues that Fortney's failure to read him the *Miranda* warnings at the outset of the second interview is actionable under § 1983.   On the contrary, a § 1983 action on that basis is squarely foreclosed by the Supreme Court's decision two terms ago in *Chavez*."); *Hannon v. Sanner*, 441 F.3d 635, 637 (8th Cir. 2006) (affirming that "*Miranda* procedural safeguards are not themselves rights protected by the Constitution," even after *Dickerson* (simplified)); *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1165 n.6 (10th Cir. 2003) (explaining that "violations of *Miranda* rights do not subject police officers to liability under § 1983" (citing *Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir. 1976))); *Lloyd v. Marshall*, 525 F. App'x 889, 892 (11th Cir. 2013) (unpublished) ("[F]ailing to follow *Miranda* procedures . . . does not violate any substantive Fifth Amendment right such that a cause of action for money damages under § 1983 is created." (quoting *Jones v. Cannon*, 174 F.3d 1271, 1291 (11th Cir. 1999))).   Even post-*Dickerson*, these cases remain the law. As a result, our court's expansive reading of that case is wrong.

Contrary to the panel's position, it appears that the *only* out-of-circuit support for the panel's decision comes from the Seventh Circuit.   *See Sornberger v. City of Knoxville*, 434 F.3d 1006, 1026–27 (7th Cir. 2006).   In that case, the court permitted a § 1983 claim based on the use of un-*Mirandized* statements in probable cause and bail hearings. *Id*. at 1027.   Even though the court found the police interrogation coercive, it also seemed to allow a stand-alone § 1983 claim for the absence of *Miranda* warnings.   *Id*.

In short, our court is out of step with Supreme Court precedent and the vast majority of circuit courts around the country.

## II.

Our decision here sets us apart from others in elevating *Miranda* warnings to the level of a constitutional right. By seizing on a few lines from a single case, we willfully ignore the mountain of Supreme Court precedent to the contrary. Worse yet, our interpretation of the Self-Incrimination Clause is detached from text and history. Given the clear weight of authority against us, we should not have been so bold.

I respectfully dissent.